UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Allie Jacox,

                Plaintiff,

v.

City of Bloomington, *et al.*,

                Defendants.

Civ. No. 16-492 (RHK/DTS)
**MEMORANDUM OPINION AND ORDER**

---

William L. Walker, Jr., Walker Law Offices, PA, Minneapolis, Minnesota, for Plaintiff.

Jason M. Hiveley, Iverson Reuvers Condon, Bloomington, Minnesota, for Defendants John Doe, Bloomington Police Department, and City of Bloomington.

---

**INTRODUCTION**

In the evening of August 14, 2015, Bloomington police officers went to Plaintiff Allie Jacox's home in an attempt to locate her grandson, who had an outstanding warrant for his arrest. There they briefly detained her, searched her, and searched her home. Pursuant to 42 U.S.C. § 1983, she now alleges that Defendants John Doe, the Bloomington Police Department, and the City of Bloomington (collectively, the "Bloomington Defendants"), as well as the Hennepin County Sheriff and Hennepin County Probation (collectively, the "Hennepin Defendants"), violated federal and state law in connection with her detention and search. Presently before the Court is the Bloomington Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion will be granted.

## BACKGROUND

The material facts are undisputed. In the evening on August 14, 2015, a Hennepin County probation officer, assisted by Bloomington police officers, performed home visits on probationers. (Blake Aff. ¶ 3; Buzicky Aff. Ex. A.) One probationer, Leon Lambert, Jr., had an active felony warrant for his arrest. (Blake Aff. ¶ 2, Ex. A; Buzicky Aff. Ex. A.) In an attempt to locate him, the team proceeded to the address listed on Lambert's warrant—8401 Portland Avenue South.

There, they encountered Jacox, who is Lambert's grandmother and owns the home at that address. Jacox testified in her deposition that she was asleep and was awakened by banging on her front door. (Jacox Dep. 15.) Once out of bed, she saw "somebody was running around on [her] front steps [but] couldn't see who it was." (Id.) She retrieved a handgun "because [she is] 80 years old, and black, and stay[s] by [her]self." (Id.) Handgun at her side, she walked to her front door and heard, "Police. Open the door." (Id.) She complied, and the group began questioning her about Lambert. (Id.) Jacox asked them to identify themselves, and they replied that they were Bloomington police officers. She observed they were "dressed all in blue," and she saw badges but was not wearing her glasses. (Id. 16.) Their questioning about Lambert resumed; she advised that he no longer lived there, and she did not know his whereabouts. (Id. 16–17.)

In the midst of this conversation, Jacox's home alarm sounded. She turned away from the group to disable it, and that is when the officers noticed her handgun. (Id. 17.) The officers backed away and shouted, "Gun! Come out with your hands up!" (Id.) Again, Jacox complied; she laid her handgun on a sewing machine near her front door

and walked outside.  (Id.)  The officers commanded her to raise her hands and get on her knees, but prior shoulder and back injuries limited her range of motion.  (Id. 18.)  She put her hands in the air and "squatted down," and a male officer cuffed her hands behind her back.  (Id.)  She said, "I [have] a permit to carry and my gun is registered."  (Id.)  The officer proceeded to search her and, in the course of the search, touched her breasts and vaginal area with the palm of his hand.  (See id. 34–37.)  Jacox wore only a thin nightgown and shirt.  (Id. 36.)

The officer then asked Jacox to wait near a tree in her yard.  (Id. 18.)  For five to six minutes, she waited there, handcuffed, while the officers discussed whether to search her home.  (Id. 18–19, 44.)  She told the officers, "If you're going to search my house, my downstairs is locked," but she refused to share the location of the keys.  (Id. 19.)  Officers secured her gun, searched the unlocked areas of the home, then returned to her, re-cuffed her hands in front of her body, and allowed her to retrieve keys to the locked rooms.  (Id. 20.)  She did so and remained inside as the officers completed their search.  (Id.)  They did not find Lambert.  Afterwards, the officers returned Jacox's firearm and left.  (Id. 20–21.)

Jacox later commenced this action in the Hennepin County District Court, alleging federal claims for unreasonable search and seizure and conspiracy, as well as related claims under state law.  The Bloomington Defendants removed the action to this Court and now move for summary judgment.  The Motion has been fully briefed, the Court heard argument on March 16, 2017, and the Motion is ripe for disposition.

3

**STANDARD OF DECISION**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Johnson v. Wheeling Mach. Prod., 779 F.3d 514, 517 (8th Cir. 2015). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Ryan v. Armstrong, 850 F.3d 419, 424 (8th Cir. 2017); Letterman v. Does, 789 F.3d 856, 858, 861 (8th Cir. 2015). The nonmoving party may not rest on allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Nationwide Prop. & Cas. Ins. Co. v. Faircloth, 845 F.3d 378, 382 (8th Cir. 2016)

**ANALYSIS**

The crux of Jacox's seven-count Amended Complaint is that the Bloomington Defendants' search of her home and her person (specifically, with an open palm over her breasts and vaginal area) violated federal and state law. But her failure to serve multiple defendants and a dearth of supporting evidence prove fatal to her claims.

When Jacox commenced this action, her Complaint named "John Doe" as a placeholder for the individual(s) she intended to sue. Then, on April 20, 2016, she received initial disclosures from the Bloomington Defendants identifying the individual officers involved in this incident. (See Hiveley Aff. ¶ 3, Ex. B.) She amended her

Complaint one month later, but again she named only "John Doe" defendants, not individual officers. (Doc. No. 10.) Now, over a year after commencing litigation and more than five months after the close of discovery (see Doc. No. 9), Jacox has still failed to identify any individual she intended to sue. Indeed, her Memorandum generically refers to "Bloomington male officers" and "the officer." (Doc. No. 21.) This lays bare a fundamental problem: there is no evidence in the record that Jacox *served* any individual officer with a copy of her Amended Complaint. At oral argument, her counsel acknowledged that he had served no individual officer in connection with this action. He rested solely on the fact that the officers' names appear in the record, but this is clearly not sufficient—the Court cannot exercise jurisdiction over a defendant that the plaintiff has failed to serve. Dodco, Inc. v. Am. Bonding Co., 7 F.3d 1387, 1388 (8th Cir. 1993); see also Thornton v. U.S. Dep't of Justice, 93 F. Supp. 2d 1057, 1064 (D. Minn. 2000) (Tunheim, J.) (dismissing unnamed defendants where the "plaintiff has neither identified [them], nor sought assistance from the Court in doing so."). Accordingly, the Court will dismiss all claims against John Doe.[1] Fed. R. Civ. P. 4(m).

Jacox has also sued the Bloomington Police Department but, as a subdivision of the City of Bloomington (the "City"), it is not a suable entity. See El-Alamin v. Radke, 369 F. App'x 770, 771 (8th Cir. 2010) (*per curiam*); Defedo v. Schnell, Civ. No. 15-

---

[1] The same analysis applies to the Hennepin Defendants—the record contains no evidence they have been served and, in the absence of service, the Court must dismiss the claims against them. Fed. R. Civ. P. 4(m); see also Hoffmann v. United States, 21 F. App'x 528, 529 (8th Cir. 2001) (*per curiam*) (district court may *sua sponte* dismiss defendants who have not been served).

2585, 2015 WL 6549586, at *2 (D. Minn. Oct. 27, 2015) (Kyle, J.). Hence, the Court will dismiss the claims against the Bloomington Police Department.

As a result of the foregoing, only the City remains as a defendant. The City is suable under § 1983, but Jacox cannot recover merely by showing the City's employee(s) may have violated her constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor."). Rather, Jacox must also show a City policy or custom was the "moving force" behind the purported violation. Id. at 694; see also Malone v. Hinman, 847 F.3d 949, 955 (8th Cir. 2017); Schaffer v. Beringer, 842 F.3d 585, 596 (8th Cir. 2016); Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). She has failed in this regard, alleging only that "Defendants, by committing the unlawful search and seizure, were carrying out the security policy of Bloomington Police Department." (Am. Compl. ¶ 12.) Beyond this fleeting reference in her Amended Complaint, she offers no allegation of any policy or custom, let alone evidence of one—her Memorandum is silent on this issue. Accordingly, the City is entitled to summary judgment on her § 1983 claim (Count 1).

Jacox next alleges the existence of a conspiracy to violate her constitutional rights. Section 1983 provides a cause of action against individuals who conspire to violate a plaintiff's constitutional rights. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). Similarly, § 1985(3) "provides a cause of action for damages sustained as a result of . . . conspiracies to deprive individuals of equal privileges and immunities and equal protection under the law." Kelly v. City of Omaha, 813 F.3d 1070, 1077 (8th Cir. 2016).

However, Jacox's failure to establish a constitutional violation compels dismissal of her conspiracy claims. See, e.g., Robbins v. Becker, 794 F.3d 988, 997 (8th Cir. 2015) ("Absent a constitutional violation, there is no actionable conspiracy claim.") (internal quotation marks and citations omitted); Askew v. Millerd, 191 F.3d at 957 ("[T]he plaintiff is . . . required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim."). Hence, Counts 2 and 3 will be dismissed.

Finally, Jacox has alleged several state-law claims. However, the Court's subject-matter jurisdiction in this action is premised on the existence of a federal question. Jurisdiction over her state-law claims exists solely by virtue of the supplemental-jurisdiction statute, 28 U.S.C. § 1367, which provides jurisdiction over state-law claims forming part of the same "case or controversy" as federal claims. The exercise of supplemental jurisdiction is discretionary, and where all federal claims have been dismissed prior to trial, the factors to be considered in deciding whether to exercise such jurisdiction typically militate against the exercise of supplemental jurisdiction. E.g., Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); accord, e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). That is the case here. Accordingly, the Court declines to exercise supplemental jurisdiction over Jacox's state-law claims, and those claims (Counts 4–7) will be dismissed without prejudice.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that (1) the Bloomington Defendants' Motion for Summary Judgment (Doc. No. 14) is **GRANTED**; (2) Counts 1–3 of Jacox's Amended Complaint (Doc. No. 10) are **DISMISSED WITH PREJUDICE** as to the City and **DISMISSED WITHOUT PREJUDICE** as to John Doe, Hennepin County Sheriff, and Hennepin County Probation; and (3) Counts 4–7 are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Date: April 20, 2017 

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge